IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALEXIS M. McCALL, | ) | CASE NO. 1:16 CV 2045 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Alexis M. McCall under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 14. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 6.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

**A.     Background facts and decision of the Administrative Law Judge ("ALJ")**

McCall who was thirty-three years old at the time of the administrative hearing,[11] is a college graduate with a degree in criminal justice.[12] Her past relevant employment history includes work as customer service representative, security guard, and sales clerk.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that McCall had the following severe impairments: cannabis dependance, cannabis abuse, opioid abuse, sedative/hypnotic/anxiolytic abuse, depression, dysthymic do, generalized anxiety disorder with panic attacks, dissociative disorder NOS, avoidant personality disorder,

---

[6] ECF # 11.

[7] ECF # 19 (Commissioner's brief); ECF # 12 (McCall's brief) and ECF # 22 (McCall's reply brief).

[8] ECF # 19-1 (Commissioner's charts); ECF # 12-2 (McCall's charts).

[9] ECF # 12-1 (McCall's fact sheet).

[10] ECF # 25.

[11] ECF # 10, Transcript ("Tr.") at 715

[12] *Id*. at 766.

[13] *Id*. at 696.

borderline personality disorder, and conversion disorder (20 CFR 404.1520(c) and 416.920(c)).[14]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding McCall's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can interact occasionally and superficially with others, superficial means the job cannot require arbitration, negotiation, or conflict resolution; management or supervision of others; or responsibility for the health, safety, and welfare of others, can receive instructions and ask questions appropriately in a smaller or more solitary and nonpublic work setting, and she can cope with ordinary and routine changes in a work setting that does not involve fast quotas or high piece rate demands.[15]

Given that residual functional capacity, the ALJ found McCall incapable of performing her past relevant work as a customer service representative, security guard, and sales clerk.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that McCall could perform.[17] The ALJ, therefore, found McCall not under a disability.[18]

---

[14] *Id*. at 686

[15] *Id.* at 690.

[16] *Id*. at 695.

[17] *Id*. at 697.

[18] *Id*.

**B.    Issues on judicial review**

McCall asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, McCall presents the following issues for judicial review:

- Whether the ALJ erred in failing to provide good reason for the weight he gave to the opinion of treating psychiatrist Christian where he again failed to recognize the nature and extent of the treatment relationship and the reasons he provided were not "good reason" under the regulations of Sixth Circuit law.

- Whether the ALJ erred in his evaluation of State agency reviewing opinion where his analysis failed to provide greater scrutiny of this opinion than that of treating psychiatrist and he essentially rejected aspects of the reviewing physician's opinion without explanation.[19]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.    Legal standards**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on

---

[19] ECF # 12 at 1.

review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable

---

[23] 20 C.F.R. § 404.1527(d)(2).

[24] *Id.*

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[34]

---

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[32] *Id.* at 544.

[33] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[34] *Id.* at 546.

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that

---

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[40] *Id.* at 375-76.

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[46] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

---

[41] *Rogers,* 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

[45] *Id.*

[46] *Id.*

[47] *Rogers*, 486 F.3d at 242.

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should

---

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the

---

[54] *Rogers*, 486 F.3d 234 at 242.

[55] *Blakley*, 581 F.3d at 406-07.

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[64] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[65]

---

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

[62] *Id.*

[63] *Id.* at 409.

[64] *Hensley*, 573 F.3d at 266-67.

[65] *Friend*, 375 F. App'x at 551-52.

The Sixth Circuit in *Blakley*[66] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[67] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[68]

In *Cole v. Astrue*,[69] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[70]

**B.  Application of standards**

McCall initially asserts that the ALJ erred in analyzing the opinion of Dr. Lorraine Christian, M.D., her treating psychiatrist.[71] Specifically, she contends that the decision to

---

[66] *Blakley*, 581 F.3d 399.

[67] *Id.* at 409-10.

[68] *Id.* at 410.

[69] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[70] *Id.* at 940.

[71] ECF # 12 at 6.

give little weight to both of Dr. Christian's functional opinions was flawed in that the reasons given - limited amount of patient contact,[72] overemphasis on observations over clinical testing,[73] use of imprecise terms,[74] and alleged inconsistency in McCall's accounts of her marijuana use[75] - do not constitute "good reasons" within the meaning of the regulations.[76] She also contends that the ALJ erred in giving great weight to the opinion of Dr. Patricia Semmelman, Ph.D. a state agency reviewing physician,[77] and that the RFC purportedly based on Dr. Semmelman's opinion is not consistent with that opinion.[78]

*1.    Dr. Christian*

As concerns the initially stated reason regarding limited patient contact, the ALJ here did not "repeat" the error of the original ALJ prior to remand, as McCall claims. The original opinion improperly concluded that Dr. Christian was not a treating source because she had insufficient visits with McCall to qualify for that designation.[79] The Commissioner observes that the ALJ here fully accepted that Dr. Christian was a treating source, but then properly

---

[72] *Id*. at 8-9.

[73] *Id*. at 9-10.

[74] *Id*. at 10-11.

[75] *Id*. at 11.

[76] *Id*. at 11-12.

[77] *Id*. at 12-13.

[78] *Id*. at 13-14.

[79] Tr. at 860.

considered the length of the treating relationship and the duration of that relationship of among the factors to be employed in determining the weight to be given.[80]

The two-step analytical model of *Gayheart* contemplates that factors such as the duration and nature of the treating relationship are to be considered in the second tier of analysis only if, at the first step, it is determined that the treating source opinion is not to be given controlling weight because it is (1) not well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) inconsistent with other substantial evidence in the record.[81] But, as I noted in 2014 in *Aiello-Zak v. Commissioner of Social Security*,[82] the Sixth Circuit has recognized that so long as the ALJ adequately addresses the factors required by *Gayheart* and then provides sufficiently specific reasons for the weight assigned, "the Commissioner's decision will not be upset by a failure to strictly follow the *Gayheart* template."[83]

Here, although it was not strictly done in a two-step *Gayheart* analysis, a consideration of the length and nature of the treating relationship does address factors set out in such an analysis, and the ALJ was entitled to consider those factors in the decision to

---

[80] ECF # 19 at 12.

[81] *Gayheart*, 710 F.3d at 376.

[82] *Aiello-Zak v. Commissioner of Social Security,* 47 F.Supp.3d 550 (N.D. Ohio 2014).

[83] *Id*. at 558; see also, *Kutsick v. Commissioner of Social Security*, 2017 WL 413995, at ** 3-4 (N.D. Ohio Jan. 31, 2017)(Baughman, M.J.)(the ALJ's failure to strictly follow *Gayheart*'s two-step analysis no basis for a remand where specific *Gayheart* factors were considered in the weight reasons articulated with sufficient specificity).

assign weight. In this case, the ALJ simply observed that Dr. Christian "had little contact with [McCall] at the time she completed the [April 2009] statement [having first treated McCall in February 2009]."[84] This remark concerning the length of treating relationship was limited to the April 2009 functional opinion and not given as a reason for discounting the October 2009 opinion.

The ALJ did reason that Dr. Christian's opinions were flawed in that they relied on subjective reports from McCall herself.[85] Here too, the ALJ did more than simply repeat the conclusory statement of over-reliance on the claimant's own reporting. In fact, the ALJ noted specifically that McCall's reporting was "often contradictory," and that McCall herself testified that "she did not tell her psychiatrist everything."[86] In another portions of the opinion, the ALJ cited particular examples of McCall's inconsistent and unreliable self-reporting:

- a claim that she lost weight is contradicted by the record showing she gained weight;[87]

- a claim that she only recently resumed use of marijuana is contradicted by evidence that she has been a continuous and frequent user;[88]

---

[84] Tr. at 693.

[85] *Id*. at 694.

[86] *Id*.

[87] *Id*.

[88] *Id*.

- when asked where she gets the money for drugs, McCall said that "her friends buy it for her," but then said that "she has no friends."[89]

Although not all of these examples arise directly from interactions with Dr. Christian, they do provide support on the face of the opinion for the articulated reason that any substantial reliance on McCall's self reporting will lessen the weight given to a functional opinion that is significantly based on that self-reporting. Moreover, and contrary to McCall's objections, her unreliable reports on marijuana use cited above, are a relevant factor in the weight given to functional opinions based on those reports. It was no error for the ALJ[90] to observe that it is not credible to claim a "continuous" habit of smoking "5-6 blunts of marijuana per day" when there is also testimony that McCall has no money and that all the marijuana is simply given McCall by others.[91]

Finally, as noted, McCall argues that the ALJ erred in discounting Dr. Christian's opinion because of its use of "vague" terms that were not "vocationally relevant."[92] She points out that Dr. Christian was responding to a questionnaire provided by the Social Security Administration itself, which form "provided no guidance on how to provide 'vocationally relevant terms'" when answering functional questions set out in the

---

[89] *Id*. at 693.

[90] McCall labels the ALJ's extensive discussion of the contradictory testimony about marijuana use throughout the opinion as mere "quibbl[ing]" over McCall's single statement that she engaged in no illegal activity nor had a dependence on substances. ECF # 12 at 11.

[91] Tr. at 691-93.

[92] ECF # 12 at 10.

questionnaire.[93] Although I recognize McCall's concerns, it is not necessary to more fully examine this objection because the prior reasons constitute adequate reasons, sufficiently stated, for assigning lesser weight to the functional opinions of Dr. Christian.

Therefore, for the reasons stated, I find no error in the ALJ's analysis of Dr. Christian's functional opinions, nor in the statement of reasons as to why those opinions were accorded only little weight.

## 2. *Dr. Semmelman*

McCall's initial objection to the decision giving great weight to Dr. Semmelman's functional opinion is that this determination improperly elevated Dr. Semmelman's opinion over that of Dr. Christian, a treating source, and Dr. Ronald Smith, Ph. D., a one time examining source.

First, to the extent that this objection is premised on the claim that Dr. Christian's opinions were improperly evaluated, that premise has been removed by the determination, outlined above, that there was no error in affording Dr. Christian's opinions little weight. Moreover, there was no error here in the ALJ giving great weight to the opinion of Dr. Semmelman, whose opinion addresses four functional areas in some detail[94] before providing an extensive written narrative.[95]

---

[93] *Id*.

[94] Tr. at 443-444.

[95] *Id*. at 445-446.

In addition, McCall argues that the RFC here does not accurately mirror the functional limitations of Dr. Semmelman's opinion in that the RFC speaks about not requiring "fast quotas or high piece rate demands"[96] while Dr. Semmelman spoke of requiring a "work setting that is not fast paced or high demand."[97] McCall contends that there are jobs that could have fast pace or high demands that are not related to quotas or piece work.[98]

While it is conceivable that a job with high demands for quality or technical perfection might not also require a fast pace or a quota on production, the jobs cited by the VE as conforming to the RFC - unskilled light laundry worker, unskilled medium kitchen helper dishwasher and unskilled sedentary packer[99] - plainly do not involve any high demand for product quality or technical exactness. Thus, to the extent that McCall here seeks to identify a supposed distinction between the RFC and Dr. Semmelman's opinion, any such variance in this case appears, at best, to be a distinction without a meaningful and relevant difference.

## Conclusion

For the reasons stated, I find that substantial evidence supports the decision of the Commissioner to deny benefits to Alexis Monique McCall, and so that decision is hereby affirmed.

---

[96] *Id*. at 690.

[97] *Id*. at 446.

[98] ECF # 12 at 14.

[99] Tr. at 697.

IT IS SO ORDERED.

Dated: September 26, 2017                    s/ William H. Baughman, Jr.
                                             United States Magistrate Judge